## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ ) | |
| Seabern Hill, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil No. 14-cv-01809 (APM) |
| ) | |
| Board of Trustees of the ) | |
| University of the District of Columbia, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## MEMORANDUM OPINION AND ORDER

## I.   INTRODUCTION

Plaintiff Seabern Hill worked in various capacities for the University of the District of

Columbia ("UDC") for 38 years, including 25 years as Acting Director of UDC Records

Management.  Beginning in 2010, however, Plaintiff's tenure at UDC took a turn for the worse.

First, Plaintiff was demoted to a less significant, department-specific position within UDC's Office

of Recruitment and Admissions.  Two years later, Plaintiff discovered that student interns working

in the Office of Recruitment and Admissions were allowed to access student records in violation

of District of Columbia privacy laws.  Hill reported the problem to the Acting Director of

Recruitment and Admissions, but she ignored his concerns.  He then elevated the issue to "the

District of Columbia Records Officer"—apparently a government official outside the University.

Shortly thereafter, Plaintiff was stripped of his duties and subsequently terminated from his job.

After obtaining a right to sue letter from the U.S. Equal Employment Opportunity

Commission, Plaintiff filed his Complaint against Defendant UDC, alleging gender

discrimination, age discrimination, and violation of 42 U.S.C. § 1983 for retaliating against his

exercise of free speech under the First Amendment.  ECF No. 1.  Defendant has filed a Motion to Dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  ECF No. 3 [hereinafter "Mot. to Dismiss"].

For the reasons stated below, the court grants in part and denies in part Defendant's Motion to Dismiss.  Plaintiff is permitted to proceed with his claims of age discrimination and violation of his right to free speech, but his claim of gender discrimination is hereby dismissed.

## II.   BACKGROUND

### A.   Factual Background

Plaintiff Seabern Hill is a 68 year old former employee of the University of the District of Columbia ("UDC").  Compl. ¶¶ 4, 36-37; Mot. to Dismiss, Ex. A.[1]  Plaintiff began his employment with UDC in the early to mid-1970s and held several positions in his 38 years there, including more than 25 years as the Acting Director of UDC Records Management.  *Id.* ¶¶ 4, 6, 8-12.  Throughout this time, Plaintiff's "work performance was always evaluated as exceptional."  *Id.* ¶ 18.  Yet despite these reviews, Plaintiff was demoted in 2010 from his position as Acting Director and reassigned to serve in "a line position as the Records Officer in the UDC Office of Recruitment and Admissions."  *Id.* ¶ 19.  Plaintiff alleges that he was not given any notice of his right to appeal the demotion.  *Id.* ¶ 20.  He further contends that the Director position he formerly held in an "Acting" capacity remained vacant for three years following his demotion, in violation of District of Columbia law.  *Id.* ¶¶ 22-23.

---

[1] Plaintiff does not specify his age in the Complaint, although he states that he worked for UDC for 38 years, starting after he earned his Master's Degree.  Compl. ¶¶ 7-8.  Assuming that he obtained his Master's Degree at age 23 at the earliest, Plaintiff would have been 61 years old at the time of his termination.  The EEOC Charge attached to Defendant's Motion to Dismiss confirms this rough estimation.  Mot. to Dismiss, Ex. A.  It lists Plaintiff's date of birth as December 6, 1947, which means that Plaintiff would have been 65 years old in February 2013 when he was terminated.  *Id.*

After his transfer to the UDC Office of Recruitment and Admissions, Plaintiff was asked to "establish[ ] the electronic records storage and retrieval system" for that office. *Id.* ¶ 24. This assignment entailed scanning and transferring student record files into the office's electronic records management system. *Id.* ¶¶ 25-28. Plaintiff personally scanned over 22,000 such files. *Id.* During his time scanning records in the Office of Recruitment and Admissions, Plaintiff did not receive any performance evaluations. *Id.* ¶ 38.

In September 2012, a new Acting Director of Recruitment and Admissions, Sandra Carter, replaced the outgoing Director, David Sanchez. *Id.* ¶¶ 29-30. Around this time, Plaintiff discovered that student interns within the Office were allowed to access student records as part of their work. *Id.* ¶ 31. Believing this to be a violation of District of Columbia privacy laws, Plaintiff shared his concerns with the new Acting Director. *Id.* ¶ 32. She, however, ignored his complaints. Plaintiff then sent an email to "the District of Columbia Records Officer," *id.* ¶ 33—evidently a District official outside the University[2]—to report that student interns were inappropriately "processing and handling confidential student records," *id.*

Soon thereafter, in November 2012, Plaintiff was "stripped of all his duties as Records Officer." *Id.* ¶ 34. In January 2013, Plaintiff received further "notice from UDC that his position as Records Officer in the Office of Recruitment and Admissions had been abolished, and that he was being terminated," effective one month later. *Id.* ¶¶ 36-37. UDC did not give Plaintiff the opportunity to apply for any vacant positions for which he might qualify. *Id.* ¶ 40. In addition, UDC refused to grant Plaintiff severance pay until he signed "a statement waiving all of his rights to contest his termination." *Id.* ¶ 39.

---

[2] Plaintiff does not specify in his Complaint whether the "District of Columbia Records Officer" is a university official or an official within the District of Columbia government. However, in his Opposition, Plaintiff says that after "Carter ignored Mr. Hill's complaints, [ ] Mr. Hill complained to individuals *outside the University*." Mem. of P.&A. in Supp. of Pl.'s Opp'n to Def.'s Mot. to Dismiss, ECF No. 8, at 3 (emphasis added).

Plaintiff alleges that sixty-nine people were terminated by UDC in the January 2013 "reduction in force" that cost him his job. *Id.* ¶ 43.  More than 50 percent of those terminated employees, he claims, were older than 40 years of age.  *Id.*  In addition, Plaintiff notes that "[i]n the year preceding [his] termination, the Department of Recruitment and Admissions hired several persons younger than the age of thirty into full-time positions."  *Id.* ¶ 41.  Further, "at least four women" in Plaintiff's office with "less seniority" were retained when he was terminated.  *Id.* ¶ 42.

### B.    Procedural Background

In April 2013, Plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC").  *Id.* ¶ 46; Mot. to Dismiss, Ex. A.  Plaintiff alleged employment discrimination on the grounds of age, disability, and retaliation.  Compl. ¶ 46; Mot. to Dismiss, Ex. A.  More than a year later, in August 2014, Plaintiff received a "right-to-sue" letter from the EEOC.  Mot. to Dismiss, Ex. C.  Thereafter, on October 29, 2014, he filed the Complaint presently before this court.

In his Complaint, Plaintiff asserts that UDC (1) discriminated against him based on his gender—a basis not raised in his Charge of Discrimination—and age, and (2) violated 42 U.S.C. § 1983 by retaliating against him for exercising his First Amendment right to free speech.  On December 15, 2014, Defendant filed a Motion to Dismiss under Rule 12(b)(6), claiming that Plaintiff had failed to state any viable causes of action.

## III.   LEGAL STANDARD

In evaluating a motion to dismiss under Rule 12(b)(6), the court must accept a plaintiff's factual allegations as true and "construe the complaint 'in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged.'"  *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (quoting *Schuler v. United States*, 617 F.2d 605, 608

(D.C. Cir. 1979)).   The court need not accept as true "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or "inferences . . . unsupported by the facts set out in the complaint," *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).   The factual allegations in the complaint need not be "detailed"; however, the Federal Rules demand more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing *Twombly*, 550 U.S. at 555).   "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).   If the facts as alleged fail to establish that a plaintiff has stated a claim upon which relief can be granted, a court must grant defendant's Rule 12(b)(6) motion.   *See Am. Chemistry Council, Inc. v. U.S. Dep't of Health & Human Servs.*, 922 F. Supp. 2d 56, 61 (D.D.C. 2013).

A court reviewing a motion to dismiss may consider "only the facts alleged in the complaint, any documents attached to or incorporated by reference in the complaint and matters of which [the court] may take judicial notice." *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).   The court here, therefore, may consider Plaintiff's EEOC Charge of Discrimination because it is incorporated by reference in his Complaint, Compl. ¶ 46.   *See, e.g.*, *Fennell v. AARP*, 770 F. Supp. 2d 118, 124 n.3 (D.D.C. 2011).

## IV.    ANALYSIS

### A.    Plaintiff's Age Discrimination Claim

The Age Discrimination in Employment Act ("the ADEA") makes it illegal for an employer to "discriminate against any individual . . . because of such individual's age." 29 U.S.C. § 623.  Aggrieved individuals must be at least 40 years old for the protections established under the ADEA to apply.  *Id.* § 631(a).

At the motion-to-dismiss stage of litigation, a plaintiff asserting a violation of the ADEA does not need to prove a *prima facie* case of discrimination.  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510-12 (2002); *see also Twombly*, 550 U.S. at 569-70 (affirming that *Swierkiewicz* remains good law).   Instead, a plaintiff need only allege that he "(1) suffered an adverse employment action (2) because of his . . . age[.]"  *Wu v. Special Counsel, Inc.*, 54 F. Supp. 3d 48, 52 (D.D.C. 2014) (citing *Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008)); *Fennell*, 770 F. Supp. 2d at 127 (noting that the law on this issue in this circuit "is clear").[3]

Although a plaintiff asserting an age discrimination claim is not required to plead a *prima facie* case, he still must plead sufficient facts to show a plausible entitlement to relief.  *Spaeth v. Georgetown Univ.*, 839 F. Supp. 2d 57, 63 (D.D.C. 2012).  Courts in this Circuit, however, "have consistently recognized the ease with which a plaintiff claiming employment discrimination can survive . . . a motion to dismiss."  *Fennell*, 770 F. Supp. 2d at 127.  Although the plaintiff must

---

[3] Although Defendant asserts otherwise, a plaintiff need not "show[ ] that (1) he was similarly situated to an employee who was not a member of the protected class, and he was treated differently from this similarly situated employee; or (2) his dismissal was not due to the two most common legitimate reasons an employer could have for discharging an employee . . . ."  Mot. to Dismiss at 8 (citations omitted) (internal quotation marks omitted).  *See Swierkiewicz*, 534 U.S. at 510-12 (holding that a plaintiff does not need to prove a *prima facie* case of discrimination to adequately allege a violation of the ADEA).  These factors can be relevant at later stages of litigation if a plaintiff attempts to prove his claim by establishing a *prima facie* case of discrimination.  *See, e.g.*, *Hopkins v. Whipple*, 630 F. Supp. 2d 33, 37-38 (D.D.C. 2009) (nothing that a plaintiff may establish his *prima facie* case under the ADEA, in part, by showing that he was treated differently from a similarly situated employee or demonstrating that his dismissal was not due to one of the two most common legitimate reasons an employer could have for terminating an employee).

present facts that "give rise[ ] to an inference of discrimination," *Wu*, 54 F. Supp. 3d at 52 (internal

quotation marks omitted) (quoting *Czekalski v. Peters*, 475 F.3d 360, 364 (D.C. Cir. 2007)), the

factual detail required to survive a motion to dismiss can be quite limited, *see, e.g.*, *Bowe-Connor*

*v. Shinseki*, 845 F. Supp. 2d 77, 89 (D.D.C. 2012) (finding that the plaintiff had stated an ADEA

claim where she alleged only that she had been called "one of the 'GOLDEN GIRLS'"); *Vaughan*

*v. Acheson*, Civ. No. 10-2184 (ABJ), 2011 WL 1515733, at *2 (D.D.C. Apr. 20, 2011) (noting that

"the plaintiff's obligation at the pleading stage is to put the defendant on notice of claims against

it," which can be accomplished even in a "complaint [that] is short on detail").

In the face of these liberal pleading requirements, Defendant argues that Plaintiff has not

alleged sufficient facts to establish a claim of age discrimination.  Mot. to Dismiss at 7-11.  The

court disagrees.  Plaintiff has asserted at least one "obvious" adverse employment action:

termination from his job.  Compl. ¶¶ 36-37; *see also Fennell*, 770 F. Supp. 2d at 127.  Defendant

has conceded this point.  Mot. to Dismiss at 10.  Thus, Plaintiff has satisfied the first pleading

requirement for an age discrimination claim.  *See Douglas v. Donovan*, 559 F.3d 549, 552

(D.C. Cir. 2009) (observing that an adverse employment action may include "a significant change

in employment status, such as hiring, firing, failing to promote, reassignment with significantly

different responsibilities, or [a] decision causing significant change in benefits" (citation omitted)

(internal quotation marks omitted)).

Additionally, Plaintiff has pled sufficient facts from which the court can infer that he was

terminated "because of" age discrimination.  According to the Supreme Court, a description of

"the events leading to [an adverse employment action], provid[ing] relevant dates, and includ[ing]

the ages . . . of at least some of the persons involved" in the discrimination claim is sufficient to

satisfy a plaintiff's obligation to state a claim for relief.  *Swierkiewicz*, 534 U.S. at 514.  Plaintiff

has pled such facts here.  He has described the events (with dates) leading to the adverse action—his demotion, the diminishment of his job responsibilities, his report of illegal activity, the lawsuit waiver he was requested to sign, and finally, his actual termination.  *See generally* Compl.  He has alleged facts about the ages of other people hired and fired around the time of these events. *See* Compl. ¶ 41 (noting that the Office of Admissions and Recruitment hired several people who were younger than 30 in the year before Plaintiff was terminated); *see also id.* ¶ 43 (stating that more than 50 percent of the people terminated in the university-wide January 2013 reduction in force were older than 40 years old).  And, although Plaintiff did not plead his age in the Complaint, it is readily apparent that Plaintiff was in his 60s during the events he described and that he therefore falls within the class of people protected by the ADEA.  29 U.S.C. § 631; *see* n.1, *supra*.

Such factual detail is far more than courts have required in other cases where the plaintiff's age discrimination claim survived a motion to dismiss.  *See, e.g., Montgomery v. Omnisec Intern. Sec. Servs., Inc.*, 961 F. Supp 2d. 178, 184 (D.D.C. 2013) (finding that a plaintiff who "alleged in one sentence that she was discriminated against, and in the next sentence, that she was terminated," adequately pled age discrimination); *Bowe-Connor*, 845 F. Supp. 2d at 89 (holding that the plaintiff had adequately pled an age discrimination claim where she alleged only that she had been called "one of the 'GOLDEN GIRLS'").  Plaintiff therefore has adequately put Defendant on notice of his potential claims and stated a claim under which relief could be granted under the ADEA. *See Swierciewicz*, 534 U.S. at 514; *Spaeth*, 839 F. Supp. 2d at 63.

## B.    Plaintiff's Gender Discrimination Claim

Before initiating a Title VII action in federal court, a person must exhaust his administrative remedies by filing an EEOC charge of discrimination.  42 U.S.C. § 2000e-5(f)(1); *see also, e.g., Bayer v. U.S. Dep't of Treasury*, 956 F.2d 330, 332 (D.C. Cir. 1992).  Once the EEOC has informed

the aggrieved individual of its "decision to dismiss [the charge] or its inability to bring a civil

action within the requisite time period"—providing "a notice of a right to sue"—the aggrieved

person has ninety days within which he may institute a civil action against his employer.  *Park v.*

*Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995); *see also* 42 U.S.C. § 2000e-5(f)(1).  The scope

of any ensuing litigation is determined by the content of the original EEOC charge.  *Park*, 71 F.3d

at 907.  Litigation must be limited to "claims that are like or reasonably related to the allegations

of the charge and growing out of such allegations."  *Id.* (citation omitted) (internal quotation marks

omitted).

Defendant UDC argues that Plaintiff has failed to exhaust his remedies with regard to his

claim of gender discrimination.  Mot. to Dismiss at 5-7.  Defendant is correct.  Plaintiff's EEOC

charge asserts age-based and disability-based discrimination, as well as retaliation, but makes no

reference to gender- or sex-based discrimination.  *Id.*, Ex. A.   Furthermore, Plaintiff expressly

concedes that he "failed to file a charge of sex discrimination with the [EEOC]."  Mem. of P.&A.

in Supp. of Pl.'s Opp'n to Def.'s Mot. to Dismiss, ECF No. 8, at 2, 5.  The court thus dismisses

Plaintiff's gender discrimination claim for failure to exhaust administrative remedies.

### C.      Plaintiff's Section 1983 Claim

Section 1983 safeguards, among other rights, the First Amendment speech rights of public

employees.  *See, e.g.*, *Lane v. Franks*, 134 S. Ct. 2369, 2377-80 (2014) (holding that a public

employee who had given sworn testimony at a former co-worker's trial was protected by the First

Amendment and Section 1983 from retaliatory action by his employer).  The Supreme Court has

long recognized, however, that a public employee's right of free expression on matters relating to

her employment is constrained.  *See Pickering v. Bd. of Educ. of Twp High Sch. Dist. 205, Will*

*Cty.*, 391 U.S. 563, 568 (1968); *Lane*, 134 S. Ct. at 2374, 2377-78.  "[I]t cannot be gainsaid that

the State has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general." *Pickering*, 391 U.S. at 568.  Thus, in assessing a public employee's free speech claim, courts must balance "the interests of the [public employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Lane*, 134 S. Ct. at 2377 (internal quotation marks omitted) (citing *Pickering*, 391 U.S. at 568).

The Court of Appeals has adopted a four-factor test for analyzing, as here, the validity of a public employee's First Amendment retaliation claim.  *Bowie v. Maddox*, 642 F.3d 1122, 1133 (D.C. Cir. 2011); *Williams v. Johnson*, 537 F. Supp. 2d 141, 150 (D.D.C. 2008).

> First, the public employee must have spoken as a citizen on a matter of public concern.  Second, the court must consider whether the governmental interest in promoting the efficiency of the public services it performs through its employees outweighs the employee's interest, as a citizen, in commenting upon matters of public concern.  Third, the employee must show that [his] speech was a substantial or motivating factor in prompting the retaliatory or punitive act.  Finally, the employee must refute the government employer's showing, if made, that it would have reached the same decision in the absence of the protected speech.

*Bowie*, 642 F.3d at 1133 (citation omitted).  "The first two factors . . . are questions of law for the court to resolve, while the latter are questions of fact ordinarily for the jury." *Tao v. Freeh*, 27 F.3d 635, 639 (D.C. Cir. 1994).

Defendant contends that Plaintiff has not satisfied the first factor, arguing that Plaintiff was neither speaking as a public citizen, Mot. to Dismiss 14-15, nor speaking on a matter of public concern, *id.* at 13-14, when he complained that intern access to student records violated District of Columbia law.  Defendant also argues that Plaintiff has not satisfied the third factor, asserting that Plaintiff has failed to "link[ ] his 'complaint' to any particular adverse action." *Id.* at 15.

### 1.    Plaintiff Spoke "as a Citizen"

The court first addresses whether Plaintiff spoke "as a citizen."    The Supreme Court held in *Garcetti v. Ceballos* that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes."  547 U.S. 410, 421 (1951).  The Court clarified in *Lane*, however, that "the mere fact that a citizen's speech concerns information acquired by virtue of his public employment does not transform that speech into employee—rather than citizen—speech."  *Lane*, 134 S. Ct. at 2379.  Instead, the critical question is "whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties."  *Id.*  Applying that standard, the Court held that a public employee's truthful sworn testimony about his co-worker, compelled by a subpoena, was not within the ordinary scope of his duties and thus was protected speech.  *Id.*

Case law in this Circuit adds a layer of complexity to the application of *Garcetti* and *Lane*. Before the Supreme Court's decision in *Lane*, the Court of Appeals had interpreted the *Garcetti* "pursuant to . . . official duties" standard to mean that "a public employee speaks without First Amendment protection when he reports conduct that interferes with his job responsibilities, even if the report is made outside his chain of command."  *Winder v. Erste*, 566 F.3d 209, 215 (D.C. Cir. 2009)).  Applying that principle, the Court of Appeals in *Winder* held that a D.C. Public Schools transportation manager's testimony before the D.C. Council, his complaint to the D.C. Inspector General, and his reports to a Special Master were not protected speech because they concerned efforts to implement various court orders, which fell within the scope of the manager's duties.  566 F.3d at 214-16.  The Court of Appeals reiterated this understanding of *Garcetti* in *Bowie*, holding that an affidavit drafted by an officer in the D.C. Inspector General's office in connection with the office's defense of an EEOC complaint was unprotected speech because "[a]ll the speech . . .

occurred in his official capacity."  642 F.3d at 1134.  And, in *Mpoy v. Rhee*, the court held that an elementary school teacher's email to D.C. Public Schools Chancellor Michelle Rhee—which primarily asserted complaints about the teacher's job conditions—was unprotected speech.  758 F.3d 285, 292-93 (D.C. Cir. 2014).  "[T]here is little doubt," the court explained, "that Mpoy was using the email to Rhee as an internal channel through which he could, in his capacity as a teacher, report [ ] interference [with his job responsibilities]."  *Id.* at 294.

In *Mpoy*, however, the Court of Appeals recognized that there is tension between its post-*Garcetti* cases and the Supreme Court's holding in *Lane*.  The court observed:  "[I]t is possible that *Winder*'s broad language, interpreting *Garcetti* as leaving an employee unprotected when he reports conduct that 'interferes with his job responsibilities,' could be in tension with *Lane*'s holding that an employee's speech is unprotected only when it is within the scope of the employee's 'ordinary job responsibilities,'" or 'ordinary job duties'."  *Mpoy*, 758 F.3d at 294-95 (citations omitted).  The court further observed that *Lane*'s "use of the adjective 'ordinary' . . . could signal a narrowing of the realm of employee speech left unprotected by *Garcetti*."  *Id.* at 295.  Nevertheless, the Court of Appeals concluded that, without more direction from the Supreme Court regarding the appropriate test for determining when speech *ordinarily* is within the scope of an employee's duties, "*Lane* does not directly or necessarily contradict *Winder*'s application of *Garcetti*."  *Id.* at 294.  Therefore, the *Winder* line of cases continues to apply.  *See Martin v. District of Columbia*, 78 F. Supp. 3d 279, 323-26 (D.D.C. 2015) (recognizing *Winder*'s continued applicability).

Defendant argues that neither Plaintiff's complaint to Carter nor Plaintiff's email to the "District of Columbia Records Officer" were protected speech because both "w[ere] made in the course of Plaintiff's employment for UDC."  Mot. to Dismiss at 14.  But viewed in the light most

favorable to Plaintiff, the Complaint does not support such a firm conclusion.  Although Plaintiff asserts that he was assigned "the major responsibility of establishing the records storage and retrieval system in the UDC Office of Recruitment and Admissions," Compl. ¶ 24, his main duty appears to have been the largely mechanical task of scanning student records, *id*. ¶¶ 25, 28 (alleging that, during his time in the Recruitment and Admissions Office, Plaintiff personally scanned more than 22,000 student files).  *See Sanders v. District of Columbia*, 85 F. Supp. 3d 523, 533-34 (D.D.C. 2015) (using the plaintiff's characterization of his duties at work to determine whether his speech fell outside the ordinary course of his duties).  There is nothing before the court that would indicate that Plaintiff's responsibilities included, for example, supervising the interns or ensuring that department employees were acting in compliance with District of Columbia law or University policy.

Moreover, although Defendant argues that "Plaintiff's familiarity with the applicable rules and regulations stemmed from his official duties," Mot. to Dismiss at 14, it is far from clear at this juncture that he gained such knowledge while employed in the Recruitment and Admissions Office.  It is equally plausible that Plaintiff derived his knowledge of relevant District of Columbia law from his *prior* position as Acting Director of UDC Records Management, a position he held for 25 years.  Compl. ¶¶ 12, 19.  That Plaintiff may have carried forward such knowledge to his new, lesser position within the Recruitment and Admissions Office does not necessarily mean that his complaints about improper records access fell within the scope of his official duties for that position.

Based strictly on the facts alleged in the Complaint, the court cannot conclude that Plaintiff's complaints about improper student access to records, made both within UDC and outside the University, fell within his "ordinary" duties or responsibilities under *Lane*.

*Cf. Sanders*, 85 F. Supp. 3d  at 533-34 (holding that a police officer who described his duties, in part, as "ensuring that his subordinates accurately reported their time," and who reported time and attendance abuses by his subordinates, had not alleged protected speech).  Nor can the court conclude that those complaints "interfere[d] with his job responsibilities" under *Winder*. *Cf. Mpoy*, 783 F.3d at 291-94 (finding that a teacher's complaints about problems within his classroom that were affecting his ability to teach students did not constitute protected speech). Discovery is likely to shed light on the full scope of Plaintiff's duties.  But at the motion to dismiss stage, when the court must draw all inferences in the Plaintiff's favor, the court concludes that Plaintiff's complaints were made as a citizen and thus were subject to First Amendment protection.

## 2.    *Plaintiff's Speech Involves a Matter of Public Concern*

Even if Plaintiff expressed his speech as a citizen, Defendant contends, Plaintiff's speech does not involve a matter of public concern and therefore is not protected by the First Amendment. Mot. to Dismiss at 13-14.  Speech is considered a matter of public concern when it pertains to "issues about which information is needed or appropriate to enable members of society to make informed decisions about the operation of their government."  *LeFande v. District of Columbia*, 613 F.3d 1155, 1159 (citations omitted) (internal quotation marks omitted).  Waste, fraud, and corruption within governmental agencies "clearly are [such matters] in which the public might be interested and that relate to the public's evaluation of the performance of governmental agencies." *Sanders*, 85 F. Supp. 3d at 534 (citations omitted) (internal quotation marks omitted).  In contrast, personnel disputes are not usually considered matters of public concern.  *Id.*  Succinctly put: "Speech relates to a matter of public concern if it is of political, social, or other concern to the community."  *LeFande*, 613 F.3d at 1159 (citations omitted) (internal quotation marks omitted). A court's determination of whether speech addresses a matter of public concern is a fact-bound

inquiry that must take into account "'the content, form, and context' of the employee's speech, 'as revealed by the whole record.'"  *Id.* (citing *Connick v. Myers*, 461 U.S. 138, 147-48 (1983)).

Defendant asserts that Plaintiff's speech is akin to an individual personnel dispute, or "expressions of personal dissatisfaction by a discontented employee."  Def.'s Mot. to Dismiss at 13.  The court disagrees with that characterization.  A public university's mismanagement of student records and its possible encouragement or disregard of unlawful behavior that compromises student privacy rights is the type of conduct that the tax-paying community would want to know.  Indeed, the Court of Appeals has found similar speech—in another case involving UDC—to constitute a matter of public concern.  In *Hall v. Ford*, the court concluded that the plaintiff's speech about violations of various NCAA and UDC rules addressed a matter of public concern.  856 F.2d 255, 259-60 (D.C. Cir. 1988).  The court explained that "[a] substantial segment of the general public would be interested in violations of athletic rules, which would reveal whether the current university administration is mismanaging the athletic program."  *Id.* at 259; *see also Pickering*, 391 U.S. at 571-72 (finding the manner of operating the school system to be a matter of public concern).  The court, at this stage, sees little material distinction between *Hall* and this case.

The court notes that, just as in *Hall*, the complaint here does not specify the exact contents of Plaintiff's complaints.  Actual evidence about the content and context of Plaintiff's speech will likely shed light on whether Plaintiff's complaints, in fact, addressed a matter of public concern.  At this point, however, Plaintiff has pled facts sufficient to survive Defendant's Motion to Dismiss.  *See, e.g.*, *Fennell*, 770 F. Supp. 2d at 127.

### 3.    *Plaintiff Has Alleged Facts Linking His Termination to His Speech*

Finally, Defendant argues that "Plaintiff has not linked his 'complaint' to any particular adverse action." Mot. to Dismiss at 15.  The court disagrees.  A plaintiff may establish causation by showing "the employer had knowledge of the employee's protected activity, and . . . the adverse personnel action took place shortly after that activity." *Holcomb v. Powell*, 433 F.3d 889, 903 (D.C. Cir. 2006) (citation and internal quotation marks omitted); *Cochise v. Salazar*, 601 F. Supp. 2d 196, 201-02 (D.D.C. 2009) ("[I]n many cases, a temporal relationship [between the protected activity and the adverse actions] may be enough for a court to infer causation.").  Here, Plaintiff has alleged that he first shared his concerns with the new Acting Director of Recruitment and Admissions, Sandra Carter, shortly after she started in that position in September 2012. Compl. ¶¶ 29-32.  After Carter ignored his complaints, Plaintiff emailed his concerns to a District government official. *Id.* ¶ 33.  Thereafter, in November 2012, Carter stripped Plaintiff of his duties and re-assigned his work to student interns.  *Id.* ¶ 34.  In January 2013, Plaintiff's job was terminated. *Id.* ¶ 36.

At the motion to dismiss stage, the court of course must draw all reasonable inferences in the plaintiff's favor.  Where, as here, the protected activity and the initial adverse employment action appear to be separated only by a matter of weeks, the court can plausibly infer that Plaintiff's speech and termination were linked.  Furthermore, whether a plaintiff's speech was a substantially motivating factor giving rise to the adverse employment action is ordinarily a question of fact for the jury.  *See Tao*, 27 F.3d at 639.  Therefore, dismissal of Plaintiff's Section 1983 claim at this juncture would be inappropriate.

V.      **CONCLUSION AND ORDER**

For the reasons stated above, the court grants in part and denies in part Defendant's Motion to Dismiss.  Plaintiff is permitted to proceed with his claims of age discrimination and violation of the right to free speech, but his claim of gender discrimination is hereby dismissed.

Dated:  November 24, 2015

Amit P. Mehta
United States District Judge